## No. 10,405.

STATE EX REL. B. F. AVERY & SONS ET AL. VS. HENRY L. DUFFEL, JUDGE OF THE TWENTY-SECOND DISTRICT COURT, PARISH OF ASCENSION, ET AL.

1. Article 580 of the Code of Practice, which provides "that some judgments are executed provisionally, although an appeal has been taken from the same," do not relate to judgments appertaining to the appointment of definitive syndics of creditors, unless the court, in rendering the decree, order that they shall administer provisionally.

2. After a suspensive appeal has been taken from such judgments, the judge has no power to grant any additional order therein involving the subject matter thereof.

APPLICATION for Prohibition.

R. N. Sims for the Relator.

E. N. Pugh and Bayne, Denegre & Bayne for the Respondent.

The opinion of the court was delivered by

WATKINS, J. Relators are severally creditors of the firm, or planting partnership of Kelley Brothers, and of John and William J. Kelley, the individual members composing said firm, all of whom, in recent judicial proceedings, applied for and sought to obtain the benefit of the State insolvent law, and to that end tendered an appropriate petition and schedules of assets and liabilities, accompanying same with the requisite oath, and thereupon the respondent judge granted the usual *ex parte* order of acceptance of their surrender for the benefit of said insolvent creditors, and directing a convocation of a meeting of their creditors, for the purpose of proving their debts and choosing a definitive syndic to take charge of their estate, in due course of law.

To these proceedings B. F. Avery & Co., H. T. Cottam & Co., the Red River and Coast Line, and the Walter A. Moore Mowing and Reaping Company, filed sundry oppositions, which came on for trial, and on which a final judgment was rendered, wherein the following things were decreed, viz :

1st. That all of the oppositions be " rejected and dismissed with costs."

2nd. " That Joseph A. Shakspeare be and he is hereby declared to be, and is recognized as the duly elected syndic of the insolvents," and directing letters issue to him as such, on his complying with the requirements of the law.

3rd. That " the process verbal of the meeting of creditors held * * on the 20th day of February, 1889, * * be and the same is hereby homologated."

4th. That the insolvents " be and they are hereby declared to be entitled to the benefit of the insolvent laws; and be and they are *hereby discharged from all the debts placed upon their bilan.*"

This judgment was rendered and signed, *in open court*, by the respondent judge, on the 30th of March, 1889.

On the 3rd of April following, the opponents filed a petition praying for a suspensive appeal from said judgment, and upon that day the respondent judge granted them, in chambers, an order of suspensive appeal " from the definitive judgment rendered by this court on the 30th of March, 1889, in the matter of the above entitled and numbered cause, and on the oppositions of said petitioners," and made it returnable to this court on the third Monday in January, 1890. The order fixed the amount of the appeal bond, and directed " that all parties in interest be cited to answer the said appeal."

Opponents furnished and caused to be filed a suspensive appeal bond, on the 3rd of April, 1889, the same day the order was granted. They subsequently, and in due time, caused the several insolvents and Joseph A. Shakspeare to be duly cited, in conformity with the order.

Having thus completed and perfected their suspensive appeal, from said definitive judgment, the object had in view by the relators, is to maintain the *status quo*, and protect their appeal, their contention being that same has been impaired and violated, and will be further impaired and violated by the respondent judge, Joseph A. Shakspeare, and the sheriff of the Parish of Ascension, during the pendency of said appeal, and to their great and irreparable injury; and they seek by our writ of prohibition to restrain and prohibit their acts of interference therewith, and in a cause in which said judge had ceased to have any jurisdiction.

Their complaint is that, at the petition of the co-respondent, Joseph A. Shakspeare, alleging himself to be "the duly qualified syndic of said insolvents," the said respondent judge granted on the 15th day of April, *subsequent* to the perfection of said appeal, an *ex parte* order directing that a sale be made for cash," of all the property surrendered by said "insolvents, and particularly and specially the 'Bocagé' plantation, * * with all the mules, agricultural implements, etc., thereon and thereunto belonging, etc.," as described in the schedules of the insolvents.

Shakspeare's petition alleges that this plantation and its adjuncts, constitutes the "principal asset surrendered," and says "that it requires a great outlay of money and labor to maintain said plantation in a condition suitable for the purposes for which it is intended and which alone gives it a value, and it is to the evident interest, and great advantage of all creditors of said insolvents, that said plantation, and all of its appurtenances, consisting of mules, agricultural implements, etc., attached thereto and thereunto belonging, should be sold at once."

In said petition it is further alleged that Shakspeare, Smith & Co. are first mortgage creditors of said insolvents, on said plantation, to the extent of nearly $50,000 with interest, and, as such, they represent, "in amount, more than a majority of the creditors of said insolvents," and that, at the meeting of the creditors of said insolvents "the majority in number and amount voted to sell said property, and all of the property of said insolvents, for cash."

This application is fortified by the affidavit of Shakspeare, Smith & Co.

Reference to the schedule of the insolvents shows that the plantation and appurtenances, which the said order directs to be sold, is valued at about $20,000, and the total of their assets is $21,457 20, only an insig-

nificant sum, in excess thereof, and the claim of Shakspeare, Smith & Co. is fixed at $51,920 59, as against total liabilities of $77,130 98, or about two-third of the whole.

Under this order of sale a writ was issued and addressed to Bateman, sheriff of Assension parish, who proceeded to advertise said plantation, and all appurtenances for sale, to take place on 25th of May, 1889, and hence he is, also, made co-respondent with Shakspeare.

The respondent judge for answer makes, in substance, the following return, viz:

That the insolvents filed their petition and he accepted their surrender on the 16th of February, 1889, and on the following day Avery & Sons filed an opposition in which, *inter alia*, they prayed that the insolvency proceedings be revoked and set aside, and decreed null and void, and that the order appertaining to the syndic, be vacated.

On the 19th of February, 1889, the Red River and Coast Line, Avery & Sons, H. T. Cottam & Co., and the Ward Mowing and Reaping Company filed their oppositions, alleging that a meeting of creditors could not lawfully be held, and prayed that the proceedings of the meeting be decreed absolutely null and void; that the claim of Rufus Lish and Shakspeare, Smith & Co., as creditors, be declared simulated, fictitious and unreal.

All of these several oppositions were duly served.

On the 20th to the 23d of February, 1889, a meeting of creditors was held, and thereat J. A. Shakspeare was duly elected definitive syndic; and that on the 25th of February, afterwards he applied to him for letters as syndic, and that he rendered an order directing letters to issue to him, on his taking the requisite oath and furnishing bond.

On the 4th of March, said opponents filed supplemental petitions, in which they charge that the pretended meeting of creditors was a nullity and the pretended election of Joseph A. Shakspeare, as syndic, was a nullity, also, on the grounds set out in their previous petitions, and they for these reasons, opposed the homologation of the meeting of creditors, and the pretended election of Shakspeare as syndic, and they conclude with a prayer " that all of the pretended proceedings be quashed, the pretended selection of said Shakspeare as syndic be declared a nullity, and that their right be reserved to move the court to place all of the property of Kelley Bros. in the custody, and possession of the sheriff."

This statement shows that the oppositions were broad enough to cover every possible issue raised in the course of the insolvency proceedings, including the proceedings of the meeting of creditors, the verity and reality of the claim of Lish and Shakspeare, Smith & Co., the

legality of the election and appointment of Shakspeare as syndic, and the legality of the *whole* of the proceedings in the premises.

All of these issues were decided by the respondent judge's decree of date, 30th of March, 1889, and long subsequent to the alleged qualification of Shakspeare as syndic.

But the respondent assigns as an excuse for his subsequent order of sale, of the 15th of April, that he considered that under C. P. 580, Shakspeare's appointment could not be suspended by appeal, and that by virtue of his order for the issuance of letters to him he was entitled to administer the affairs of the insolvents *provisionally*, and notwithstanding the appeal. But the order directs that letters issue to the *definitive syndic*. His right as syndic is based upon an election by the creditors, and not upon an appointment by the respondent judge. He did not appoint Shakspeare, or any one else, provisional syndic. Nowhere in the whole proceedings is there any mention made of Shakspeare being directed or empowered to administer provisionally; and the opponents specifically attacked the legality and regularity of the proceedings of the meeting of creditors, and the appointment of the syndic.

These matters were embraced in the decree and are covered by the appeal.

To such a case as this the provisions of C. P. 580 do not apply. It declares that "some judgments are executed provisionally, although an appeal has been taken from the same. * * Such judgments relate * * to the appointment of syndics of creditors, *when the court orders that they shall administer provisionally.*"

But in this case the court has not ordered that Shakspeare shall administer provisionally, hence the judgment appealed from cannot be provisionally executed. Indeed, the judge had, upon an *ex parte* petition of J. A. Shakspeare, presented to him the day after the meeting of creditors had adjourned, and more than thirty days prior to his final judgment on the oppositions, granted an order directing letters to issue to him as the *elected* syndic; and the right of said Shakspeare to act as syndic was subsequently questioned by opponents, decided by the judgment, and is an issue in their appeal. It is quite impossible, in the face of this record, for us to recognize the right of Shakspeare to administer provisionally, or to perform any act or function as syndic during the pendency of the relators' suspensive appeal. * * The judgment appealed from is not such a one as may be provisionally executed, notwithstanding a suspensive appeal.

State ex. rel Girardey vs. SouthernBank, Opinion Book No. 50, page 553, is quite an analogous case, and in which the court had under consideration, and interpreted the provisions of C. P. 580, and said:

"It is true that the functions and duties of the commissioners named in the decree are somewhat similar to those of syndics, but the decree confers on those commissioners the power to *permanently* administer, and were we to consider that they and the syndic belong to one and the same class, still the dissimilarity between the judgment appealed from, and those which are provisionally executed, are manifest."

Quite a smilar controversy is presented in State ex rel. Pierson vs. Judge, 22 Ann. 61, of which the court said:

"The appeal in this case involves not only the appointment of a dative testamentary executor, but the *right* of a court to appoint an executor at all.

"We think that a suspensive appeal should have been granted, and that it is necessary in order to the efficacy of the appellate jurisdiction of this court. It is therefore ordered that the writ of prohibition be made peremptory."

But if it were true, as stated by the respondent judge, that the appointment of Shakspeare was to operate at least provisionally, and that the order of appointment could not be suspensively appealed from, it would not follow that the respondent judge had the right, notwithstanding the suspensive appeal granted by him, to order the sale of the real estate, for it is apparent that a *provisional* syndic would have no right to *sell* real estate.

In this case a suspensive appeal was duly granted. The appeal involves the right and authority of the respondent judge to appoint a syndic at all. Pending a suspensive appeal he has granted an *ex parte* order of sale of all the property of the insolvents, and at the instance of said alleged syndic, whose appointment is in question, and upon the application of certain alleged creditors whose claims are declared to be simulated and unreal.

We do not think the respondent judge had jurisdiction or authority to put in force the terms of the judgment even provisionally, and that his action in the premises was improvident.

It is therefore ordered that the writ of prohibition be made peremptory at the cost of the respondents severally.